**GRAY PANTHERS ADVOCACY COMMITTEE, et al.,**
**Appellants,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary, Department of Health and Human Services, Appellee.**

**No. 90–5306.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1991.

Decided June 18, 1991.

Rehearing En Banc Denied Sept. 12, 1991.

Toby Edelman, with whom Patricia Nemore was on the brief, Washington, D.C., for appellants.

Michael E. Robinson, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Barbara C. Biddle, Atty., Dept. of Justice, were on the brief, Washington, D.C., for appellee.

Before MIKVA, Chief Judge, and SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

HENDERSON, Circuit Judge:

At issue in this appeal are regulations promulgated by the Health Care Financing Administration of the Department of Health and Human Services (HHS or the Department) governing the requirements that a nursing home must meet for its services to be covered under Medicare and Medicaid. The appellants, plaintiffs below, are nursing home residents and an organization that represents the interests of the low-income elderly. They claim that, in promulgating the challenged regulations, the appellee HHS Secretary failed to heed congressional direction that the new regulations be at least as stringent as those they supersede. They further assert that some of the regulations in question are invalid because the Secretary failed to follow the Administrative Procedure Act's notice-and-comment procedures before issuing them. Our review of the record compels us to reject the appellants' arguments and affirm the district court's holding that the regulations are valid and its grant of summary judgment to the defendants.

## I. BACKGROUND

Federal regulation of the nursing home industry is accomplished primarily through the conditions that Congress imposes on nursing home facilities' receipt of funds under Medicare and Medicaid.[1] In order to receive federal moneys under either of these programs, a nursing home must qualify as a "skilled nursing facility." 42 U.S.C. § 1395x(j) (Medicare); id. § 1396a(a)(28) (Medicaid). The interplay between the regulatory and congressional definitions of this term forms the backdrop against which we decide this appeal.

On October 16, 1987, the Department issued a notice of proposed rulemaking (NPRM) containing substantial revisions to the regulations governing nursing home participation in Medicare and Medicaid. 52 Fed.Reg. 38582. After HHS's publication of the NPRM, but before the close of the comment period and before the publication of the final regulations, Congress passed the Omnibus Budget Reconciliation Act of 1987 (OBRA '87), Pub.L. No. 100–203, 101 Stat. 1330 (1987). In amending the Social Security Act, this statute extensively modified the criteria a nursing home facility must meet to participate in the Medicare and Medicaid programs. See id. § 4201, 101 Stat. 1330–160 to 1330–175 (codified as amended at 42 U.S.C. § 1395i–3) (Medicare); see also id. § 4211, 101 Stat. 1330–182 to 1330–207 (codified as amended at 42 U.S.C. § 1396r) (Medicaid). Of particular importance to this appeal, OBRA '87 required the Secretary to issue regulations governing nursing homes that "are adequate to protect the health, safety, welfare, and rights of residents." OBRA '87 § 4201(a)(3), 101 Stat. at 1330–172 (codified at 42 U.S.C. § 1395i–3(f)(1)); id. § 4211(c), 101 Stat. at 1330–200 (codified at 42 U.S.C. § 1396r(f)(1)).

Using the extensive new OBRA '87 requirements and the comments it had received in response to its 1987 NPRM, the Department published final nursing home regulations on February 2, 1989. 54 Fed. Reg. 5316. Where possible, the final regulations were designed to be consistent with both OBRA '87 and the comments to the 1987 NPRM; these regulations were to become effective on August 1, 1989. Id. at 5317. In some instances, OBRA '87 imposed new requirements. The Secretary determined that some of these new requirements were sufficiently detailed to be self-executing and they were implemented in new regulations that merely restated the language of the statute; these regulations were issued without further notice and comment. Id. For those portions of the statute imposing new requirements that were inconsistent with earlier law, the effective date of the regulations implementing them was postponed until October 1, 1990; otherwise, the regulations were to become effective on August 1, 1989.[2] Id. Finally, OBRA '87 imposed certain requirements that could neither be squared with the NPRM nor implemented by regulations that merely tracked the statutory language. In these cases, the Department stated it would later publish a proposed rule implementing the new requirements. Id. Those requirements are not at issue in this appeal.

The portions of HHS's regulations primarily at issue in this appeal are those governing nursing homes' provision of dietary and social services. See 42 C.F.R. §§ 405.1125, 405.1130 (1989). On two occasions after the publication of the 1987 NPRM, Congress spoke on the requirements for nursing home participation in Medicare and Medicaid. The conference

---

1. Medicare, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., provides, for the aged and disabled, federal health insurance covering, inter alia, post-hospital care in nursing home facilities. Id. §§ 1395c, 1395x(j). Medicaid, established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., provides "federal financial assistance to States that choose to reimburse certain costs of medical treatment for

needy persons," Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980), including the costs of nursing home services. 42 U.S.C. § 1396a(a)(13).

2. HHS later delayed, until January 1, 1990, the effective date of the regulations that would otherwise have become effective on August 1, 1989. See 54 Fed.Reg. 29717.

report to the Medicare Catastrophic Coverage Act of 1988, Pub.L. 100–360, stated:

It is the intent of the conferees that the Secretary ensure that [Medicare and Medicaid] requirements regarding consultation and supervision of social work services be *at least as stringent as* those in effect prior to the enactment of these changes.

The conferees also wish to clarify that it was the intent of [the Medicare and Medicaid amendments to OBRA '87] that the Secretary ensure that the requirements for dietary services be *at least as stringent as* those in effect prior to enactment of [OBRA '87].

H.R.Conf.Rep. No. 661, 100th Cong., 2d Sess. 269, *reprinted in* 1988 U.S.Code Cong. & Admin.News 803, 923, 1047 (emphasis added).[3] Later, in the Omnibus Budget Reconciliation Act of 1990 (OBRA '90), Congress directed that

Any regulations promulgated and applied by the Secretary of Health and Human Services after the date of the enactment of the Omnibus Budget Reconciliation Act of 1987 with respect to [social and dietary] services ... shall include requirements for providers of such services that are *at least as strict as* the requirements applicable to providers of such services prior to the enactment of the Omnibus Budget Reconciliation Act of 1987.

OBRA '90, Pub.L. 101–508, § 4801(e)(17)(A), 104 Stat. 1388, 1388–218 (emphasis added).

As they did in the district court, the appellants assert that the dietary and social services regulations are invalid because they are not "at least as strict as" the regulations they replaced. They further contend that those portions of the regulations that merely restate the statutory requirements and that were issued without following the notice-and-comment procedures violate the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.* The district court rejected both arguments and

granted the defendants' summary judgment motion. It found that, in issuing the final rule, the Department adequately compared the stringency of the new regulations to that of the old ones. *Gray Panthers Advocacy Comm. v. Sullivan,* No. 89–0605, slip op. at 15–16 (D.D.C. Sept. 17, 1990). It also compared the new and the old dietary and social services regulations itself and concluded that "the new regulations are at least as stringent as existing requirements." *Id.* at 13; *see also id.* at 17–19. With respect to the plaintiffs' second challenge to the regulations, the district court held that neither OBRA '87 nor relevant legislative history imposed on HHS the duty to adhere to notice-and-comment procedures when issuing all of the challenged regulations. *Id.* at 22–26. Those portions of the regulations that merely restated requirements contained in OBRA '87, the court held, were not subject to the APA's notice-and-comment requirements. *Id.* at 28–31. This appeal followed.

## II. Appellants' Challenge to the Stringency of the New Regulations

In analyzing the plaintiffs' claim regarding the stringency of the new regulations, the district court looked to the conference report accompanying the Medicare Catastrophic Coverage Act of 1988 (MCCA '88) for the definition of a term included in OBRA '87. The MCCA '88 conference report purported to define OBRA '87's requirement that new nursing home regulations be "adequate" to protect the welfare of residents as meaning that they be "at least as stringent as" the regulations already in place. The district court treated this conference report as "an authoritative indication of the meaning that Congress has attached to the term 'adequate' in the provision of social and dietary services to nursing home residents." Slip Op. at 10. Even if a conference committee report could provide an "authoritative" indication of congressional intent with respect to contemporaneous legislation, we have serious

---

**3.** In the Omnibus Budget Reconciliation Act of 1989, Congress delayed the effective date of the final regulations here at issue until October 1, 1990. OBRA '89, Pub.L. 101–239, § 6901(a), 103 Stat. 2106, 2298.

doubts whether the MCCA '88 conference report can authoritatively define a term used in the earlier statute.[4] *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 n. 13, 100 S.Ct. 2051, 2061 n. 13, 64 L.Ed.2d 766 (1980) ("[a] mere statement in a conference report of [subsequent] legislation as to what the Committee believes an earlier statute meant" provides "an extremely hazardous basis for inferring the meaning of a congressional enactment"); *Pierce v. Underwood*, 487 U.S. 552, 566, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (committee report's statement regarding earlier statute cannot be "authoritative interpretation" because "it is the function of the courts and not the Legislature ... to say what an enacted statute means"). However, in light of language contained in OBRA '90, that is an issue we need not decide.

In OBRA '90, Congress clearly stated that any regulations governing social and dietary services promulgated after OBRA '87 must be "at least as strict" as those in effect before OBRA '87. OBRA '90 § 4801(e)(17)(A), 104 Stat. at 1388–218. The question then becomes whether, in promulgating the contested regulations, the Secretary satisfied the requirements of the congressionally imposed "at least as strict as" standard.

■ In *United Mine Workers of America v. Dole*, 870 F.2d 662, 666–67 (D.C.Cir. 1989) (*UMW*), we considered an agency's rulemaking burden when a statute constrains it to issue only those new regulations that are at least as protective as regulations already in force. When operating under such restraints, an agency engaged in notice-and-comment rulemaking under section 553 of the APA must explain how the new rules meet the statutory standard. The stringency requirement constitutes an express congressional limitation on the agency's authority to issue new regulations; to facilitate judicial review, the agency must discuss, in the "concise general statement of [the rule's] basis and purpose," 5 U.S.C. § 553(c), how it has complied with the applicable strictures in promulgating its new regulations. *UMW*, 870 F.2d at 666–67; *see also Independent U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 852–54 (D.C.Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 76, 98 L.Ed.2d 39 (1987). Only when an agency has offered such an explanation for its action may the court properly "consider whether the decision was based on a consideration of the relevant factors," *Bowman Transp. Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), while, at the same time, deferring, as we must, to determinations that fall within the scope of the agency's expertise. *See UMW*, 870 F.2d at 667; *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ With this standard in mind, we turn to the contested regulations. The Secretary viewed himself as bound by the "at least as stringent as" standard contained in the MCCA conference report. He stated as much in connection with the issuance of the dietary services regulations,[5] 54 Fed.Reg. 5339, and, after adverting to the standard,

---

4. Although MCCA '88 amended OBRA '87, it worked no change in the portion of the earlier statute imposing the adequacy requirement on regulations governing nursing home dietary and social services. MCCA '88, Pub.L. 100–360, § 411(*l*)(1)–(3), 102 Stat. 683, 800–03 (1988) (portion of MCCA '88 amending OBRA '87). Under these circumstances, that is, where the term being construed is not changed by the amendment, it is doubtful that the conference report for the amendment can provide an after-the-fact definition of that term. *Cf. International Bhd. of Elec. Workers, Local No. 474 v. NLRB*, 814 F.2d 697, 708 (D.C.Cir.1987) (where amendment does not alter meaning of term "bargaining unit" in NLRA § 9, language in amendment's conference report does not alter meaning of § 9 term); *see also United States v. American College of Physicians*, 475 U.S. 834, 845–47, 106 S.Ct. 1591, 1597–99, 89 L.Ed.2d 841 (1986).

5. The dietary services regulations the deletion of which the appellants complain of covered three primary areas: the allowable length of time between dinner and the next day's breakfast, the qualifications of the individual in charge of dietary services and the daily length of service for food service personnel.

The old regulation on the length of time between dinner and breakfast provided that there should be "no[ ] more than a 14–hour span between substantial evening meal and breakfast." 42 C.F.R. § 405.1125(d) (1989). The new regulation provides:

he discussed how the new dietary services regulations meet it. *See id.* (treating qualifications of dietary services supervisor, length of daily service of food services

> There must be no more than 14 hours between a substantial evening meal and breakfast the following day, except ... [w]hen a nourishing snack is provided at bedtime, up to 16 hours may elapse between a substantial evening meal and breakfast the following day if a resident group agrees to this meal span and a nourishing snack is served.

42 C.F.R. § 483.35(f)(2) & (4) (1990).

With respect to the individual in charge of dietary services, the old regulation provided: "Overall supervisory responsibility for the dietetic service is assigned to a full-time qualified dietetic service supervisor. If the dietetic service supervisor is not a qualified dietitian he functions with frequent, regularly scheduled consultation from a person so qualified." 42 C.F.R. § 405.1125(a) (1989). The new regulation provides: "The facility must employ a qualified dietitian either full-time, part-time, or on a consultant basis.... If a qualified dietitian is not employed full-time, the facility must designate a person to serve as the director of food service." 42 C.F.R. § 483.35(a)(1) (1990).

Finally, the old regulation required food service personnel to be on duty daily "over a period of 12 or more hours." 42 C.F.R. § 405.1125(a) (1989). The new regulation deletes this requirement but still dictates that food be "prepared by methods that conserve nutritive value, flavor and appearances" and that it be "palatable, attractive, and at the proper temperature." 42 C.F.R. § 483.35(d)(1) & (2) (1990).

**6.** The appellants complain that the new social services regulations are less stringent than the old ones in the following areas: (1) residents' social and emotional needs, (2) financial assistance for social services, (3) residents' personal and property rights, (4) social worker qualifications and (5) confidentiality of social information. The section of the old regulation treating social services provided:

> (a) *Standard: Social service functions.* The medically related social and emotional needs of the patient are identified and services provided to meet them, either by qualified staff of the facility, or by referral, based on established procedures, to appropriate social agencies. If financial assistance is indicated, arrangements are made promptly for referral to an appropriate agency. The patient and his family or responsible person are fully informed of the patient's personal and property rights.
>
> (b) *Standard: Staffing.* If the facility offers social services, a member of the staff of the facility is designated as responsible for social services. If the designated person is not a qualified social worker, the facility has a written agreement with a qualified social worker or recognized social agency for consultation

personnel and allowable time span between dinner and breakfast). Similarly, with regard to social services,[6] the Secretary compared the new regulations to the require-

> and assistance on a regularly scheduled basis. ...
>
> (c) *Standard: Records and confidentiality of social data.* Records of pertinent social data about personal and family problems medically related to the patient's illness and care, and of action taken to meet his needs, are maintained in the patient's medical record. If social services are provided by an outside resource, a record is maintained of each referral to such resource. Policies and procedures are established for ensuring the confidentiality of all patients' social information.

42 C.F.R. § 405.1130 (1989).

The requirements the deletion of which the appellants complain of have been relocated in the new regulations. The new rule governing social work addresses the first and fourth of the appellants' concerns. It states:

> (1) The facility must provide medically-related social services to attain or maintain the highest practicable physical, mental or psychosocial well-being of each resident.
>
> (2) *Skilled nursing facilities.* (i) Until October 1, 1990, the facility must meet the social service needs of its residents by either obtaining social services from an outside source or by furnishing the service directly; and (ii) Effective October 1, 1990, a facility with more than 120 beds must employ a full-time qualified social worker.
>
> *    *    *    *    *    *
>
> (4) *Qualifications of social worker.* A qualified social worker is an individual with—
>
> (i) A bachelor's degree in social work; or
>
> (ii) Two years of social work supervised experience in a health care setting working directly with individuals; or
>
> (iii) Similar professional qualifications.

42 C.F.R. § 483.15(g) (1990).

On the question of financial assistance, the regulations require the facilities to furnish residents with "oral and written information about how to apply for and use Medicare and Medicaid benefits." 42 C.F.R. § 483.10(b)(9) (1990). On the topic of property rights, the new regulations state that the "resident has the right to retain and use personal possessions, including some furnishings, and appropriate clothing, as space permits, unless to do so would infringe upon the rights or health and safety of other residents." 42 C.F.R. § 483.10(m) (1990). The new regulations guarantee a resident a number of personal rights, including the right to inspect and copy medical records, the right to be fully informed of his health status and the right to refuse medical treatment. 42 C.F.R. § 483.10(b)(2)–(4) (1990). Finally, on the question of confidentiality, the new rule states:

> The resident has the right to personal privacy and confidentiality of his or her personal and clinical records.

ments of OBRA '87. *See* 54 Fed.Reg. 5343. The appellants correctly point out that, in connection with the social services recommendations, the Secretary did not refer explicitly to the stringency requirement. The appellants agree, however, that OBRA '87 works "a substantial and significant revision of federal nursing home law" and "sets out a new vision of nursing home care and a new set of expectations for facilities [and] residents." Appellants' Brief at 11. If the new rules meet the heightened requirements of OBRA '87, as the Secretary has stated they do, we think it clear that they are at least as strict as the old ones; we will not invalidate the new rule merely because it contains no explicit comparison with the old regulations. As did the district court, we hold that the preamble to the challenged regulations adequately "discuss[es] the relative protectiveness of the new regulations." Slip.Op. at 15; *see also id.* ("preamble to the final rule includes a comparison between existing requirements and new requirements mandated by OBRA 87").

■ After concluding that the Secretary had performed a sufficient comparison between the two sets of regulations, the district court undertook its own evaluation of the stringency of the new rules. *See* slip op. at 12–13 ("Upon comparing the text of these regulations, it appears that the new regulations are at least as stringent as existing requirements"); *id.* at 17–19 ("A comparison of the current rules with the new rules reveals that [plaintiffs'] argument is without merit;" the "new provision is not less stringent than existing requirements"). We note that the district court itself should not conduct such a comparison. Under our *UMW* decision, the district court should determine only whether the agency has adequately explained its compliance with the standard at issue; it may not "substitute its own judgment on the comparative protectiveness of the old and new regulations for that of the Secretary." *UMW*, 870 F.2d at 667; *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*

*Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). In light of the sufficiency of the Secretary's comparison, however, the district court's error in this regard is harmless.

### III. APPELLANTS' ADMINISTRATIVE PROCEDURE ACT CHALLENGE

The appellants further contend that the portions of the challenged regulations that did not appear in the NPRM, but were issued for the first time in the final regulations, are invalid because they were not issued pursuant to the notice-and-comment provisions of the APA. The provisions with respect to which the appellants make this argument are those that either restate or paraphrase the detailed requirements imposed by OBRA '87 that the Secretary determined to be self-executing. The appellants do not contend that these regulations fail to accurately carry out the requirements of OBRA '87: they concede that the regulations properly "quoted or paraphrased" the requirements of the statute. Appellants' Brief at 28; *see also* slip op. at 28. Nor do they argue that the Secretary erred in deciding that portions of the statute are self-executing. Rather, they claim portions of OBRA '87 and relevant legislative history impose a blanket notice-and-comment requirement for all regulations implementing the new law and they assert that, by deciding to issue regulations, the agency obligated itself to follow the full notice-and-comment procedures.

■ We turn first to the passage in OBRA '87 on which the appellants rely:
It is the duty and responsibility of the Secretary to assure that requirements which govern the provision of care in skilled nursing facilities under this title, and the enforcement of such requirements, are adequate to protect the health, safety, welfare, and rights of residents and to promote the effective and efficient use of public moneys.

OBRA '87 § 4201(a)(3), 101 Stat. at 1330–172 (codified at 42 U.S.C. § 1395i–3(f)(1));

---

(1) Personal privacy includes accommodations, medical treatment, written and telephone communications, personal care, visits, and meetings of family and resident groups.

42 C.F.R. § 483.10(e) (1990).

*id.* § 4211(c), 101 Stat. at 1330–200 (codified at 42 U.S.C. § 1396r(f)(1)). The appellants argue that this language imposes on the Secretary a duty to implement all portions of OBRA '87 through further substantive regulations that, in turn, must be issued through the APA's notice-and-comment procedure. This argument stretches the language of the statute too far. We are unwilling to find, in a passage setting out the Secretary's general responsibilities, a congressional direction for comprehensive substantive rulemaking. Our reluctance in this regard is strengthened where, as here, other portions of the same statute clearly and explicitly impose a rulemaking requirement. *See, e.g.,* 42 U.S.C. §§ 1395i-3(f)(2)(A)(i)–(iii), 1396r(f)(2)(A)(i)–(iii) (stating "Secretary *shall establish*" regulations governing nurse aid training and competency evaluation programs) (emphasis added); §§ 1395i-3(f)(4), 1396r(f)(4) (directing Secretary to develop standards to ensure adequate qualifications for nursing facility administrators).

■ Seeking support for their argument in OBRA '87's legislative history, the appellants point to a report from the House Energy and Commerce Committee calling on the Secretary to "discard the existing regulatory practices associated with the terms 'conditions' and 'standards' and develop a regulatory approach that will assure the clear articulation and enforcement of the requirements in the Committee amendment." H.R.Rep. No. 391(I), 100th Cong., 1st Sess. 453, *reprinted in* 1987 U.S.CODE CONG. & ADMIN.NEWS 2313–1, 2313–273. Far from imposing the blanket notice-and-comment rulemaking obligation for which the appellants argue, this language reflects only a terminology change in the regulation of nursing homes. OBRA '87 abandoned a complicated regulatory scheme in which the criteria imposed on nursing homes were subdivided into "conditions," "standards" and "elements." *See id.* The new law uniformly designates the criteria nursing homes must meet as "requirements." We do not construe this change in terminology to affect the agency's rulemaking responsibilities.[7]

■ Finally, the appellants contend that, whenever an agency issues regulations it intends to enforce, it must follow the notice-and-comment procedures. They offer no support for this proposition and it runs directly contrary to the prevailing authority. The appellants have conceded that the contested regulations faithfully restate the relevant portions of OBRA '87. Our decision in *Komjathy v. National Transportation Safety Bd.,* 832 F.2d 1294 (D.C.Cir. 1987), *cert. denied,* 486 U.S. 1057, 108 S.Ct. 2825, 100 L.Ed.2d 926 (1988) holds that, when regulations merely restate the statute they implement, notice-and-comment procedures are unnecessary:

> The fact that the regulation merely reiterates the statutory language precludes any serious argument that the regulation affects the agency or [regulated individuals] in such a way as to require notice-and-comment procedures pursuant to 5 U.S.C. § 553. The regulation does not restrict the agency's statutory discretion in any way. Nor could the reprinting of the statutory language in a regulation have affected [a regulated individual's] rights and interests. This is therefore not a case where the court needs to make the sometimes difficult decision about whether a given rule . . . is substantive, thus requiring notice and comment pursuant to 5 U.S.C. § 553, or interpretative and therefore exempt from notice and comment requirements.

---

7. The appellants also rely on language in the report of the House Energy and Commerce Committee on OBRA '89. This statute delayed the effective date of the final regulations until October 1, 1990. *See supra,* n. 3. In the report, the committee recommended that HHS "review [the final] regulations and, where appropriate . . . revise and reissue them with an opportunity for public comment." H.R.Rep. No. 247, 101st Cong., 1st Sess. 457, *reprinted in* 1989 U.S.CODE CONG. & ADMIN.NEWS 1906, 2183. Again, this recommendation imposes no blanket rulemaking direction. The report expresses the committee's concern that, because they were based on an NPRM issued before enactment of OBRA '87, the final nursing home regulations did not adequately reflect the requirements of the nursing home reform law. The passage the appellants cite requires just what it says: a review of the final regulations to ensure consistency with OBRA '87. Nowhere in the report can we find the broad-based rulemaking requirement the appellants urge on us.

*Id.* at 1296–97 (citations omitted); *cf. American Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1045–46 (D.C.Cir.1987). The appellants attempt to distinguish *Komjathy* on the ground that the reiterative regulation there at issue was much briefer than those here. It was not the brevity of the regulation on which the *Komjathy* court based its decision, however; it was the fact that the "regulation merely reiterates the statutory language." 832 F.2d at 1296. The same is true here and we can see no reason to require notice-and-comment procedures solely because HHS chose to place a more extensive portion of its statute into its regulations.

## IV. CONCLUSION

The district court was correct in holding that HHS adequately determined the challenged regulations to be at least as strict as their predecessors and that the portions of the statute reiterating portions of OBRA '87 are valid although not promulgated in compliance with the APA's notice-and-comment procedures. Accordingly, the district court's grant of summary judgment is

*Affirmed.*