**BOROUGH OF RIDGEFIELD and the Village of Ridgefield Park, both Municipal Corporations of the State of New Jersey**

v.

**NEW YORK SUSQUEHANNA & WESTERN RAILROAD (a/k/a Delaware Otsego System) and Unnamed Trucking Companies.**

**Appeal of BOROUGH OF RIDGEFIELD and the Village of Ridgefield Park.**

No. 86–5330.

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit Rule 12(6) Nov. 6, 1986.

Decided Jan. 26, 1987.

---

Martin T. Durkin, Durkin & Boggia, Ridgefield Park, N.J., for appellant Village of Ridgefield Park.

Michael L. Scherby, Andrew T. Fede, Contant, Contant, Schuber, Scherby & Atkins, Hackensack, N.J., for appellant Borough of Ridgefield.

Paul R. DeFilippo, Michael F. Quinn, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for appellee New York Susquehanna & Western R.R.

Joseph F. Lisa, Woodbury, N.J., for Allied Energy Corp.

Before SLOVITER and STAPLETON, Circuit Judges and GREEN, District Judge [*].

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

The Borough of Ridgefield and the Village of Ridgefield Park ("the Municipalities") appeal from the dismissal of their complaint against New York Susquehanna & Western Railroad ("NYS & W"). The complaint alleged that NYS & W's butane "transloading" operation violated regulations promulgated under the Hazardous Materials Transportation Act ("the HMTA"), 49 U.S.C. §§ 1801–1813 (1976 & Supp.1986), as well as state statutory and common law. We agree with the district court that no implied private right of action exists under the HMTA. We therefore affirm the dismissal of the Municipalities' complaint.

## I.

As part of its rail transport business, NYS & W operates a railyard that is in the Borough of Ridgefield and adjacent to the Village of Ridgefield Park. Railroad tank cars of butane arrive at the railyard and sit on a siding until the butane is transferred directly from the tank cars into tank trucks. This transfer process is referred to as "transloading." Once loaded, the tank trucks exit the yard across a narrow converted railroad bridge, which also carries rail and automobile traffic, onto a street in the Village of Ridgefield Park.

The HMTA gives the Secretary of Transportation the authority to promulgate regulations to promote the safe transportation of hazardous materials in commerce. 49 U.S.C. §§ 1803–1804. The Secretary has published a hazardous material table that designates butane, a liquid petroleum gas, as a hazardous material. 49 C.F.R. § 172.-101 (1985).

The Municipalities filed a complaint in district court on August 26, 1985, asserting *inter alia* that storing butane on the rail siding until it is transferred into tank trucks violates 49 C.F.R. § 174.204(a)(2)(ii), a regulation promulgated under the HMTA that mandates the use of permanent storage tanks for liquid gases such as butane. The HMTA contains no provision authorizing private suits to enforce the act or regulations issued under it. The district court

[*] Honorable Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation

concluded that, according to the test established by *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), and clarified by later Supreme Court cases, no implied private right of action exists with respect to the HMTA. Thus the Municipalities' allegations under the act did not state a claim upon which relief could be granted. After determining that the complaint presented no basis for relief under the federal statute, the district court dismissed the Municipalities' pendent state-law claims for want of subject matter jurisdiction, citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). 632 F.Supp. 582. The Municipalities filed a timely notice of appeal.

We review the district court decision for error in the application of controlling legal precepts. We find that Judge Stern, applying the appropriate legal rules, properly dismissed the complaint. A description of the familiar implied right of action analysis, as it applies to the facts of this case, follows.

## II.

The Supreme Court in *Cort v. Ash* specified several factors that are relevant to the issue of whether a statute provides an implicit private right of action. Under *Cort* the relevant inquiries are: 1) is the plaintiff one of the class for whose especial benefit the statute was enacted? 2) is there an indication of legislative intent to provide or deny such a remedy? 3) is an implied right of action consistent with the underlying purposes of the legislative scheme? and 4) is the cause of action one traditionally relegated to state law, thus making a federal implied right inappropriate? 422 U.S. at 78, 95 S.Ct. at 2087.

As the district court here recognized, however, later Supreme Court decisions have pinpointed legislative intent as the key inquiry. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981). The four *Cort* factors are to be used to discern Congress' intent. *See Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). And as this court has explained in *United States v. FMC Corp.,* 717 F.2d 775, 781 (1983), if the first two *Cort* factors fail to indicate an implied right of action, the last two cannot by themselves establish such a right.

In analyzing the HMTA, we "look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief. Then we review the legislative history and other traditional aids of statutory interpretation to determine Congressional intent." *Middlesex County Sewerage Auth.,* 453 U.S. at 13, 101 S.Ct. at 2623. We agree with Judge Stern that such an analysis in this case produces "overwhelming evidence against the existence of any congressional intent to establish a private right of action" and a "dearth of evidence in favor of such intent." App. at 198.

First, neither the statute itself nor the legislative history reveal any intent especially to protect a class that includes the plaintiffs, municipalities, among its members. Congress has not enacted a statute "with an unmistakable focus on [a] benefited class," but instead has framed the HMTA as a general command to a federal agency. *Universities Research Ass'n, Inc. v. Coutu,* 450 U.S. 754, 771–72, 101 S.Ct. 1451, 1461–62, 67 L.Ed.2d 662 (1981) (quoting *Cannon v. University of Chicago,* 441 U.S. at 691, 99 S.Ct. at 1955). All residents of the United States are the HMTA's intended beneficiaries. House Report No. 93–1083 does not indicate otherwise by mentioning the House Committee's "deep concern with protecting communities and the employees of the carriers involved when [explosives] are being shipped by rail." 1974 U.S.Code Cong. & Admin.News 7669, 7683. The HMTA itself declares that its purpose is "to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately

against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." 49 U.S.C. § 1801. This court emphasized in *United States v. FMC Corp.*, 717 F.2d at 783–85, that rather than supporting an implied right of action, such a statutory scheme militates against a court finding an implied right. The Supreme Court "has been especially reluctant to imply causes of action under statutes that create duties on the part of persons for the benefit of the public at large." *Cannon v. University of Chicago*, 441 U.S. 677, 690–92 n. 13, 99 S.Ct. 1946, 1954–55 n. 13, 60 L.Ed.2d 560 (1979).

Moreover, the HMTA specifies remedies that are available for its enforcement and the legislative history reveals a decision to omit citizen enforcement suits from these remedies, providing persuasive evidence that Congress did not intend to create an implied private cause of action under the statute. Under 49 U.S.C. §§ 1809–1810, actions brought by the United States Attorney General can result in civil or criminal penalties, as well as equitable relief, when regulations promulgated pursuant to the HMTA are violated. The Supreme Court reiterated in *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n* that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." 453 U.S. at 14–15, 101 S.Ct. at 2623 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 at 19, 100 S.Ct. 242 at 247, 62 L.Ed.2d 146 (1979)). "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." 453 U.S. at 15, 101 S.Ct. at 2623.

Here all other indications are consistent with no intent to provide a private cause of action, rather than the contrary. The Senate version contained broad language providing for private actions to redress violations of the HMTA or regulations issued under it. *See* S. 4057, 93d Cong., 2d Sess., 120 Cong.Rec. 34,091 (1974). Thus Congress was clearly presented with this op-

tion for enforcing the statute, but decided not to include such a provision in the HMTA as enacted. Nothing in the legislative history supports the Municipalities' assertion that this omission resulted from Congress' wish to allow private causes of action unlimited by any statutory requirements, such as the requirement of notice to the agency in the Senate version's citizen suit provision. When Congress provides certain remedies and explicitly rejects others, the legislative intent to restrict enforcement mechanisms to those specified in the statute is especially easy to discern.

The Municipalities rely on *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), to support the proposition that we should interpret the HMTA's lack of reference to private enforcement suits as indicative of a congressional desire to have courts imply private causes of action under the act. The present case, however, is distinguishable from *Merrill Lynch* and other situations in which Congress amends a statute after courts have found implied rights of action under a previous version. In *Merrill Lynch* Congress, in the course of amending the Commodities Exchange Act, had left intact provisions of the preexisting act under which the Supreme Court and other federal courts had assumed that an implied private right of action was available. The Supreme Court in *Merrill Lynch* found it significant that these provisions had been preserved with no evidence in the legislative history that Congress disapproved of the "contemporary legal context." 456 U.S. at 381, 102 S.Ct. at 1841 (quoting *Cannon v. University of Chicago*, 441 U.S. at 698–99, 99 S.Ct. at 1958). As the opinion stated, "When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts ... the inquiry logically is different." 456 U.S. at 378, 102 S.Ct. at 1839. Here we are considering as a matter of first impression whether the HMTA contemplates private enforcement actions. There is no preexisting jurisprudence to which Congress can be deemed to have consented by its silence.

Congress enacted the HMTA to vest the Secretary of Transportation with the authority necessary to coordinate federal efforts in the regulation of hazardous materials' transportation. We decline to add an implied private right of action to the statute's specified enforcement provisions.**

### III.

Because the Municipalities' alleged cause of action under the HMTA fails to state a claim upon which federal relief can be granted, the district court properly dismissed the numerous pendent state-law claims in the complaint. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Accordingly, we affirm dismissal of all counts in the Municipalities' complaint.

** It is instructive to note that under the act a state or municipality may enforce its own transportation regulations after approval of the regulations by the Secretary of Transportation. *See* 49 U.S.C. § 1811. This cooperative system of regulations allows municipalities to ensure a safe environment, while allowing oversight by the federal agency. In filing their complaint in district court, the Municipalities' chose an un-available route to ensure the safety of butane transportation by New York Susquehanna & Western.

