**N.H. MOTOR TRANSPORT, et al.**

v.

**TOWN OF PLAISTOW.**

No. C–93–149–L.

United States District Court,
D. New Hampshire.

Sept. 19, 1994.

---

**696**

Daniel T. Chabot, William J. Barron, La-Flamme, Migliori, Barron, & Chabot, Haverhill, MA, for plaintiffs.

Sumner F. Kalman, Andrew D. Dunn, Devine, Millimet & Branch, PA, Manchester, NH, for defendant.

### ORDER

LOUGHLIN, Senior District Judge.

The plaintiff, New Hampshire Motor Transport Association is an unincorporated trade association which represents the interests of New Hampshire Motor Carriers who are members.

Plaintiff Arnold Pevna, Trustee of Olympiad Realty Trust, is the owner of a parcel of land located partially in the town of Newton and partially in the town of Plaistow upon which a trucking terminal is located, which is leased to Atlas Motor Express, Inc.

Plaintiff, Atlas Motor Express, Inc. is a certificated interstate motor carrier, which leases the trucking terminal owned by Olympiad.

The plaintiffs, Engle Oostdyke, Inc., Gerard Express, Inc., Peterri Transportation Co., Inc., Wolf Trucking Inc., and Ivan Bondy are certified interstate motor carriers, with principal places of business in Bensalem, Pennsylvania, South Kearney, New Jersey, Los Angeles, California, and Hemet, California respectively. Each of the named motor carriers maintains trucks that make use of the Atlas terminal on a routine basis.

The Defendant, Town of Plaistow, is a Municipal Corporation established under the laws of the State of New Hampshire, and at all times relative hereto, has in effect a zoning ordinance pursuant to the provisions of N.H.Rev.Stat.Ann. chs. 672, 677 (1986).

Atlas is a New Hampshire business corporation which has been engaged in the trucking business since 1983.

Atlas first operated out of a terminal located in Haverhill, Massachusetts and in 1986 moved to a terminal building located in the Town of Plaistow where it operated until it moved to its current terminal in September, 1988.

Arnold Pevna and his wife are the owners of Olympiad Realty Trust. Atlas is owned by their three sons. Arnold Pevna operated a company known as East–West Consolidators which arranges freight transportation but which runs no trucks of its own.

In May of 1987 Olympiad entered into a purchase and sale agreement to purchase a parcel of land consisting of approximately eight acres, located in Newton and Plaistow, where the Atlas trucking terminal is now located. The agreement was contingent upon getting all necessary approvals from the towns of Plaistow and Newton to construct a trucking terminal.

On October 29, 1986 legal counsel for Atlas corresponded with the Plaistow Planning Board inquiring as to whether the plans for the proposed trucking terminal facility needed to be reviewed by the Plaistow Planning Board and whether there were any potential problems.

At the June 24, 1987 meeting of the Plaistow Planning Board the Board reviewed the plans for the proposed terminal and indicated in its minutes that Atlas did not have to come before the Board.

On July 17, 1987 the Plaistow Planning Board through its administrative assistant wrote a letter confirming its actions at the June 24 meeting stating that "since the proposed site was entirely in Newton and, with access off Kingston Road through a private drive with passage easement, this plan does not require a public hearing in this town."

Olympiad subsequently went through the site plan approval process with the Newton Planning Board. Owners of adjacent residential properties in Plaistow were notified and appeared at the meetings in opposition to the project. Site plan approval was ultimately granted.

Frederick Royer who lives at 48 Kingston Road, Plaistow attended two meetings in the Town of Newton, but was not notified of other hearings. Royer and other abutters objected to the operation of the terminal during night hours specifically between 7:30 p.m. and 5:30 or 6:00 a.m.

Three owners of properties located along Kingston Road in Plaistow brought a Writ of Certiorari in Rockingham County Superior Court seeking to vacate the Newton Planning Board's approval of the Atlas terminal project.

The Writ of Certiorari was settled. As part of the settlement, the passage easement was paved and trees were planted to act as a noise buffer between the terminal and contiguous residential property.

On February 10, 1988 Olympiad acquired title to the proposed site in a deed recorded at Rockingham County Registry of Deeds Book 2727, Page 418.

Olympiad then obtained construction financing and built the presently existing terminal at a total cost of approximately $1,000,000.00.

Although there were meetings between abutters and Plaistow selectmen with regard to the Atlas terminal no remedial action was taken by the Town of Plaistow. Plaistow felt that it had no jurisdiction as the terminal was located in Newton. Atlas had no notice of these meetings which appeared to be impromptu.

Atlas began operations at the terminal in September, 1988. Residents who own property abutting Kingston Road again filed complaints with the Board of Selectmen of the town of Plaistow relating to the trucking activity at the Atlas terminal.

On October 7, 1988 the town of Plaistow served a cease and desist order upon "Arnold Pevna d/b/a Atlas Trucking" for violation of Article 1 Section 1.4 of the Plaistow Zoning Ordinance.

Section 1.4 of the Plaistow Zoning Ordinance states as follows: "Any uses that may be obnoxious or injurious by reason of the production or emission of odors, dust, smoke, refuse matter, fume, noise, vibration or other similar conditions, or that are dangerous to the comfort, peace, enjoyment, health or safety of the community, whether it contributes to its disturbance or annoyance are prohibited in all Districts."

Atlas and the other truckers who use the terminal continued to conduct their trucking operations until February of 1989 when Plaistow brought a Petition in Rockingham County Superior Court seeking temporary injunctive relief.

On February 28, 1989 the Superior Court amended its temporary order enjoining truck traffic at the terminal between the hours of 7:30 p.m. and 6:30 a.m.

On March 7, 1989 the Superior Court amended its temporary order so as to allow one truck to leave the terminal at or after 5:15 A.M. on weekdays and two more trucks to leave on or after 5:45 P.M. The amended order also allowed trucks unlimited access to the terminal until 9:00 P.M.

In September, 1989 after a trial on the merits the Superior Court issued an order permanently restricting access to the terminal by truck traffic as follows:

6:00 A.M.—9:00 P.M.—No restrictions

9:00 P.M.—11:00 P.M.—Two trucks may arrive or depart

11:00 P.M.—5:00 A.M.—No trucks may arrive or depart

5:00 A.M.—6:00 A.M.—Three trucks may arrive or depart.

The Rockingham County Superior Court has indicated that the last court order will not be modified.

## The Site

The parcel on which the trucking terminal sits is located partly in an industrial zone in the Town of Newton and partly in a residential zone in the Town of Plaistow. In the Town of Plaistow, the terminal is located adjacent to both the industrial and the residential zone. A lumber yard and wood dry kiln are located entirely in the Town of Plaistow and are adjacent to the terminal site located in the industrial zone. The trucking terminal and the kiln share access to Kingston Road over a private way which is located partly in the residential zone and sometimes is known as Garland Way. The residential zones located in both Plaistow and Newton are located at varying distance from Kingston Road and require access through the Plaistow residential zone.

The kiln/lumber yard has been located at its site in Plaistow for in excess of twenty years and has been serviced by large tractor-trailer rigs which hauled lumber to and from the site. A railroad line passes nearby and the kiln site is serviced by a railroad spur.

A portion of Garland Way (the 2090 feet closest to Kingston Road) passes through a residential zone located in the town of Plaistow.

Garland Way accesses onto Kingston Road, which is a state highway, located in the town of Plaistow. Kingston Road was State Route 125 until the present Route 125 was constructed in 1952. Kingston Road is heavily travelled and is used by numerous trucks in addition to the trucks using the Atlas terminal.

The access into the terminal from Kingston Road is .6 miles from Route 125.

The Royers, Frederick and Denise, Paul Holmes and Laura Cafisco testified about the noise conditions, and odors from the truck traffic which was especially irritating at night. Their frustration was quite evident at trial. Presumably on advice of counsel diaries of events pertaining to truck traffic at night were made by Paul Holmes, Laura Cafisco and Denise Royer. Denise Royer quite cogently stated that she could not cope after awhile with having pencil and pad poised in her hand over a period of some years to record violations of the Rockingham County Court order later to be used as evidence.

## Trucking Operations at the Terminal

The court took a view of Kingston Road, Garland Avenue, the trucking terminal outside view of the Royer and Holmes residence, outside and inside view of the Cafisco residence and a view of the former terminal of Atlas with contiguous areas. Additionally, while in the Cafisco residence a demonstration for the court's edification was made by having an Atlas truck drive by and then make a return trip by the Cafisco Residence. A view can be considered as evidence. *Chouinard v. Shaw*, 99 N.H. 26, 104 A.2d 522 (1954).

The Atlas trucking operation involves three areas. Customers have Atlas pick up freight within Atlas' operating area which is New England and then deliver it. A line hauler or third-party motor carrier outside New England, a great proportion of which come from Southern California haul to the Atlas terminal. Atlas will then re-deliver it within the New England area. Atlas business also involves "freight assembly." Atlas trucks pick up freight within New England, assemble the freight at its terminal where it is then loaded onto line hauler trucks for delivery outside New England.

Trucks use Kingston Road which was formerly Route 125 and then turn onto Garland Road for ingress or egress to the trucking terminal.

The freight is shipped in tractor trailers, tandem tractor trailers, and smaller trucks which do not involve a tractor. The vehicles can vary in weight from 33,000 pounds to heavier line haul vehicles which can be as heavy as 80,000 pounds.

David Pevna, one of the three brother owners of Atlas stated that there was only sporadic need of trucks arriving at the terminal between 11:00 p.m. and 5:00 a.m. Evidence elicited from abutting owners belie that fact as there has been and continues to

be many violations of the Rockingham County court order.

While the court has empathy for the position of Atlas in its efforts to run a viable business in the highly competitive trucking business, this has to be balanced with the interests of abutting landowners in a residential area. Very poignant is the predicament and testimony of Paul Holmes. Mr. Holmes has lived in Plaistow most of his seventy-two years. The past thirty years he has resided at 55 Kingston Road. His home is only thirty-two feet from the roadway and he has various medical ailments which are exacerbated by noise, odor and dust as trucks pass his home.

The remedial action taken by Atlas rings somewhat hollow with respect to violations by line haulers usually from California. The gate at the trucking terminal is closed from 11:00 p.m. until 5:00 a.m. Albeit, the following scenario may take place. The line haulers and other vehicles arrive within the prohibited hours and have the following alternatives: sleep in their trucks until 5:00 a.m., return down the road to get something to eat and perhaps come back again or just leave and go to a rest area until 5:00 or 6:00 p.m. and then return. No matter what the alternative, this does not alleviate the problems of abutting landowners. Albeit trucks are still coming or going to the terminal at prohibited times. The court understands that weather conditions, traffic, delays at weigh stations and road detours can delay trucks. The court is also aware that many different drivers are used in long hauls, but an admonition to the companies involved that if vehicles cannot arrive at the terminal before 11:00 p.m. and 5:00 a.m. they should go elsewhere is not unreasonable.

Approximately 50% of the trailer loads going in and out of the Atlas terminal contain some items which are defined as hazardous materials under the Hazardous Materials Transportation Uniform Safety Act, 49 U.S.C.App. § 1801 and the regulations promulgated thereunder. Atlas has applied for and received from the United States Department of Transportation a Hazardous Materials Certificate of Registration. The restrictions on access to the Atlas terminal cause delays in the shipment of some of the hazardous materials.

The freight arrives at the terminal for the most part, by exiting from Route 495 and traveling along Route 125 into Plaistow to Kingston Road, where a turn is made onto Garland Way. The trucks for the most part, proceed in a southerly direction down Kingston Road until they reach the Atlas terminal located approximately six tenths of a mile over the road from Route 125 and 5.5 miles over the road from Route 495. Typically, a loaded tractor trailer arrives at the terminal in the late afternoon or early evening.

Upon arrival at the terminal, trucks loaded with the day's pick-ups are unloaded onto the loading platform and sorted by geographic area. When all trucks are unloaded, they are then reloaded with deliveries destined for a specific geographical area. This process goes on throughout the nighttime hours. Typically trucks leave in the early morning in order to meet the customers delivery requirements.

Atlas' gross sales have increased in the last several years and the increase in gross sales has been accompanied by an increase in trucking traffic in and out of Atlas' terminal located in Newton, New Hampshire by both Atlas and line haul trucks.

The court accepts Atlas' contention that while its gross sales have dramatically increased since 1988 from $2,037,344.00 to $5,027,344.00 in 1993 there was not a commensurate increase in net profits. The salaries that the three Pevna brothers draw which is approximately $600.00 weekly are not exorbitant, but actually appear to be parsimonious.

The standard margin of profit for a trucking operation similar to Atlas in New England is 4–5%. Atlas' margin of profit in the years 1988 through 1993 never exceeded .4%. In 1993 a loss of 1.8% was incurred.

Further the court finds that limiting the hours of operation undoubtedly has had some impact on the profitability of Atlas.

The general business climate in New England has been untoward during the past six

years due to decline in manufacturing which has also affected small companies like Atlas.

The trucks arriving at the Atlas terminal in connection with the freight assembly portion of its business are often "long haul" trucks, meaning that they come from a great distance. Often trucks such as the Wolf Trucking and Ivan Bondy trucks come from as far away as Southern California.

These long haul trucks almost exclusively use Interstate Route 495 and invariably use Route 125.

The freight that is shipped to the Atlas terminal, comes both from the New England states via Atlas trucks and from remote locations throughout the United States via "line haul" trucks.

The assembly and distribution portion of Atlas' business (which involves long haul trucks) is especially time sensitive. A majority of Atlas' customers, both in manufacturing and in retail, are involved in what is known in the business as "just in time" delivery or "zero inventory" control. "Just in time" means that Atlas' customers do not stock any more inventory than is absolutely necessary for running their business. The customers do not hold inventory and only order goods on an "as needed" basis. Many of the Atlas customers are located several hours from the Atlas terminal. "Just in time" or "zero inventory" means that inventory must be delivered on the morning of its use. Therefore, it is often necessary for Atlas trucks to leave the terminal in the early hours of the morning in order to accomplish delivery to its customer for use on that same day. Restrictions on the hours of operation of the terminal limit Atlas' ability to comply with its customers' requirements to receive deliveries "just in time." Additionally, many retail customers require Atlas to deliver in the early morning because of time restrictions placed upon deliveries at Shopping Malls. Again most customers are located several hours from the Plaistow terminal. The restrictions upon Atlas' hours of operation limit the "stem time" (being the time it takes to travel from the terminal to the customer) which inhibits Atlas' ability to comply with "just in time" and "early morning only" delivery requirements.

The time pressures placed upon Atlas are common to the trucking industry in general.

If Atlas is unable to make an early delivery or a late pick-up because of the access restriction it will not just lose that delivery but will in all likelihood lose the entire business of that customer because shippers tend to use only one trucking company so as to facilitate service and to get volume discounts.

Atlas and other truckers using the terminal have violated the terms of the Rockingham County Supreme Court access restriction.

There was evidence presented that most competitors of Atlas are able to operate 24 hours a day. There was also evidence that Roadway Trucking located in Londonderry, New Hampshire was restricted from using one road to its terminal because it was in a residential area. There was further evidence that other roads leading to the terminal were not restricted between the hours of 9:00 p.m. and 6:00 a.m.

Ross terminal in Penacook, New Hampshire, for a time had restrictions on hours of operation, but allegedly was able to purchase complaining residential landowners property and thus allowed to have unrestricted hourly access to its terminal.

Two trucking terminals located in Avon and Norwood, Massachusetts also have nightime hourly restrictions.

The standard delivery service expected of truckers operating in New England is "overnight" or "next day" delivery. This means that when freight arrives at the Atlas terminal it is expected to be delivered the next day and often customers require delivery the next morning.

Atlas has lost customers and has been unable to take on other customers because of the access restrictions imposed upon the terminal by the town of Plaistow.

It is sometimes necessary to have trucks enter and leave the terminal during the restricted hours in order to provide the level of service that is demanded by customers and that is standard in the trucking industry.

## Discussion

The plaintiff contends that the enforcement of Section 1.4 of the Town of Plaistow's Zoning Ordinance which forbids access to the Atlas terminal during certain nighttime hours violates the following laws.

49 U.S.C.App. § 2312 of the Surface Transportation Assistance Act, violation of the Hazardous Materials Transportation Uniform Safety Act and an excessive burden upon interstate commerce in violation of Article 1, § 8, Clause 3 of the United States Constitution.

Without a doubt the court heard much of the same evidence presented to Superior Court Judges Perkins and Holman relative to the Plaistow zoning ordinance.

From plaintiff's perspective it was unfortunate that prior to Atlas' moving from its prior location at its Plaistow site because of lease problems, that it was unable to resolve with Plaistow whether the zoning board would require a site review. On the other hand one cannot say that the Plaistow Zoning Board acted unreasonably in determining that it had no jurisdiction as the terminal was located in Newton, an adjoining town. The town also relied upon advice of its counsel Attorney Kalman.

Reference is made to docket entry # 19, dated February 28, 1994. This was an order of this court denying defendant's Motion for Partial Summary Judgment. The court in denying the motion stated that the case was not res judicata as there was not an identity of the cause of action in both the earlier and later suits. As stated in the order, a federal court must accord a state court judgment the same preclusive effect which it would be given under the laws of the state where judgment was entered. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1983). For what it is worth after hearing much of the same evidence that was presented to the Rockingham County Superior Court the court agrees with its findings.

■ The court next addresses plaintiff's contention that current enforcement of the Rockingham County decree denies reasonable access to the terminal in contravention of 49 U.S.C.App. § 2312 entitled the Surface Transportation Assistance Act.

49 U.S.C.App. § 2312 states:

**Access to the Interstate System**

(a) No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this title between (1) the Interstate and Defense Highway System (other than any segment thereof which is exempted under section 411(i) or 416(e) of this title [49 U.S.C.S.App. 21211(i) or 2315(e) ]) and any other qualifying Federal-aid Primary System highways, as designated by the Secretary, and (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers and for any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28½ feet and which generally operates as part of a vehicle combination described in section 411(c) of this Act [49 U.S.C.S.App. § 2311(c) ].

(b) Nothing in this section shall be construed as preventing any State or local government from imposing any reasonable restriction, based on safety considerations, on any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28½ feet and which generally operated as part of a vehicle combination described in section 411(c) of this Act [49 U.S.C.S.App. § 2311(c) ].

Acting pursuant to its constitutional power to regulate commerce among states Article I, section 8 of the Constitution, Congress has on occasion enacted laws that directly affect use of the national network of highways commonly referred to as interstate highways. *New York State Motor Truck Ass'n v. City of New York*, 654 F.Supp. 1521 (S.D.N.Y.1987), affirmed 833 F.2d 430 (1987).

In *New York State Motor Truck Ass'n, supra*, the City of New York sought to restrict use of tandem trailers on city interstate highways to certain hours of the day. The court, in granting a preliminary injunction noted that:

"If New York State (or New York City) possess the power to limit federally approved tandems' use of Interstate highways within

their borders, then other adjoining states, in this case New Jersey and Connecticut, would possess similar powers to limit the hours of operation of tandems on interstate highways within their borders. The potential for paralysis of federally approved tandems is manifest."

In this case there has been a minor conflict in the evidence relative to the distance from Interstate Highway 495 (which runs in a general easterly and westerly direction in the Commonwealth of Massachusetts) to the plaintiff's terminal. Testimony varied from a minimum mileage of 5.1 miles to a maximum mileage of six miles. Upon leaving Route 495 at the Plaistow exit to drive to the plaintiff's terminal, Route 125 is the most direct route. Somewhat unbelievable, but apparently true was evidence that Route 125 which this court thought was a major New Hampshire artery or highway linking the Massachusetts border to Rochester, New Hampshire was not part of the National Highway System. Its omission was perhaps inadvertent and there was evidence presented that the New Hampshire Legislature may remedy this omission, but this will not be in the immediate future.

Unlike the *New York State Motor Truck Ass'n* case, *supra,* where the City of New York attempted to limit hours in which tandem trailers could traverse city interstate highways, Interstate 495 does not run through the Town of Plaistow. Direct access or egress to Route 495 in Haverhill, Massachusetts is not being denied to the plaintiff. Plaintiff's trucks or other trucks traveling to or from the terminal have to travel 5 to 6 miles along Garland Way, Kingston Road and Route 125 before arriving at Route 495. Defendant Town of Plaistow has a valid and reasonable ordinance enforcing noise and odor control within its residential limits. The Rockingham County Superior Court, after careful consideration and reconsideration in well-reasoned decrees by two different judges reached an equitable compromise. Considered were the exigencies of plaintiff's business and the equal rights of adjoining landowners in the enjoyment of their homes.

The defendant also alleges that the decree of Rockingham County Superior Court is res judicata with respect to the commerce clause claim. The court does not address this issue as the court finds no violation of the commerce clause in the context of the federal case.

### Hazardous Materials Handling Act

■ It is the further claim of the plaintiff that enforcement of 1.4 of the Plaistow Zoning Ordinance so as to forbid access to the Atlas terminal during nighttime hours has the effect of delaying shipment of hazardous materials in violation of the Hazardous Materials Transportation Uniform Safety Act and the regulations promulgated pursuant thereto.

49 U.S.C.App. § 1801 provides:

The Congress finds that:

1. The Department of Transportation estimates that approximately 4 billion tons of regulated hazardous materials are transported each year and that approximately 500,000 movements of hazardous materials occur each day.

2. Accidents involving the release of hazardous materials are a serious threat to public health and safety.

3. Many States and localities have enacted laws and regulations which vary from Federal laws and regulations pertaining to the transportation of hazardous materials, thereby creating the potential for unreasonable hazards in other jurisdictions and confounding shippers and carriers which attempt to comply with multiple and conflicting registration, permitting, routing, notification, and other regulatory requirements.

4. Because of the potential risks to life, property, and the environment posed by unintentional releases of hazardous materials, consistency in laws and regulations governing the transportation of hazardous materials is necessary and desirable.

5. In order to achieve greater uniformity and to promote the public health, welfare, and safety at all levels, Federal standards for regulating the transportation of hazardous materials is necessary and desirable.

6. In order to provide reasonable, adequate, and cost-effective protection from

the risks posed by the transportation of hazardous materials, a network of adequately trained State and local emergency response personnel is required.

7. The Office of Technology Assessment has estimated that approximately 1,500,000 emergency response personnel need better basic or advanced training for responding to the unintentional release of hazardous materials at fixed facilities and in transportation, and

8. the movement of hazardous materials in commerce is necessary and desirable to maintain economic vitality and meet consumer demands, and shall be conducted in a safe and efficient manner.

In *Borough of Ridgefield v. New York Susquehanna & Western Railroad,* 810 F.2d 57 (3rd Cir.1987) the court dismissed an action brought under the Hazardous Materials Transportation Act by municipalities stating that no private right of action exists under the act.

Congress enacted the HMTA to vest the Secretary of Transportation with the authority necessary to coordinate federal efforts in the regulation of hazardous materials' transportation. The court declined to add an implied private right of action to the statute's specified enforcement provisions.

The Hazardous Material Transportation Act empowers the Secretary of Transportation "to protect the Nation adequately against the risks of life and property which are inherent in the transportation of hazardous materials in commerce." *City of New York v. United States Department of Transportation,* 715 F.2d 732 (1983).

There is a paucity of law regarding the Hazardous Material Transportation Act. The primary Congressional purpose intended to be achieved through Hazardous Materials Transportation Act was to secure general pattern of uniform, national regulations, and thus to preclude multiplicity of state and local regulations in the area of hazardous materials transportation. *National Tank Truck Carriers, Inc. v. Burke,* 608 F.2d 819 (1st Cir.1979).

The hazardous materials, paints and solvents which are hauled to the Atlas terminal are of the lesser noxious types, unlike nuclear waste, for example. There are on occasion ten or twelve hour delays in delivery if the mode of transportation has to wait outside the terminal until it opens. There is also a question unanswered in this circuit on whether Atlas can bring a private right of action under the Act. *See Ridgefield, supra* (private action could not be brought).

To recapitulate. The court has empathy with the respective positions and problems that the plaintiff has, the Town of Plaistow and just as importantly the residents along Kingston Road who have suffered inconveniences of having truck traffic traveling by their homes in contravention of the Rockingham County decree.

The court does not find that enforcement of Section 1.4 of the Town of Plaistow's Zoning Ordinance violated either the Hazardous Materials Transportation Uniform Safety Act, 49 U.S.C.App. § 2312 or was an excessive burden upon interstate commerce in violation of Article 1, § 8, Clause 3 of the United States Constitution. Further the court in view of its ruling for the defendant does not address the issue of res judicata or collateral estoppel.