Hanscom's Truck Stop v. Portsmouth    CV-98-488-B    11/10/98    P

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

Hanscom's Truck Stop, Inc.

    v.                                    Civil No. 98-488-B

City of Portsmouth


**REPORT AND RECOMMENDATION**

The motion for a preliminary injunction (document no. 2) filed by plaintiff, Hanscom's Truck Stop, Inc. ("Hanscom's"), has been referred to me for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1)(B).  For the reasons stated below, I recommend that defendant, the City of Portsmouth ("City"), be preliminarily enjoined from enforcing City Ordinance 7.706 ("Ordinance"), with respect to certain truck engines and refrigeration units at Hanscom's, as specified below.

## Background

Hanscom's filed this action for declaratory and injunctive relief, based on an argument that the Surface Transportation Assistance Act of 1982 ("Act"), as amended, 49 U.S.C. § 31114, pre-empts the Ordinance.  Hanscom's has moved for a preliminary injunction to prevent the City from enforcing the Ordinance.

An evidentiary hearing, with both parties present, was held

on October 28, 1998.  Samuel "Buzzy" Hanscom, president of Hanscom's, appeared as the only witness, and exhibits were admitted into evidence.  The following facts were established:

Route 1 Bypass ("Bypass") is a four-lane, divided highway, running for approximately one mile through Portsmouth, New Hampshire from the Portsmouth Traffic Circle to the Sarah Mildred Long Bridge, linking Portsmouth to Kittery, Maine.  The City has designated the Bypass as a through truck route within its boundaries.

Hanscom's has operated truck stops on the north- and south-bound sides of the Bypass for more than thirty years.  The truck stops are within one mile of Interstate 95 and the Spaulding Turnpike, which intersect at the Portsmouth Traffic Circle. Hanscom's is one of only three service stations on the Bypass that offer diesel fuel.  Hanscom's north-bound and south-bound operations, together, provide a takeout restaurant, showers, tire repairs, truck-related supplies, eighteen diesel pumps, and parking for at least eleven trucks.  Hanscom's is virtually ringed by residences on the east side of the Bypass.

The average trucker refueling at Hanscom's stays approximately twenty to thirty minutes.  Truckers using the showers or the take-out counter typically stay an hour or more, and drivers often park overnight, especially during bad weather.

Hanscom's tire repair facility operates twenty-four hours per day, 365 days per year. It is the only repair facility offering such hours along Interstate 95 from Fairfield, Maine (approximately 140 miles to the north) to Massachusetts or Connecticut to the south. As a result, a large part of Hanscom's business is repairing or replacing blown truck tires, a process that usually takes one hour.

The majority of drivers using Hanscom's are transporting food products between Canada or Maine and points South. Typically, south-bound trucks carry frozen foods (e.g., seafood and potato products) or fresh foods (including lobsters, fish, potatoes, and blueberries). Northbound loads are typically fresh fruits or vegetables. Tractor-trailers with refrigeration units comprise the majority of Hanscom's business.

Drivers use refrigeration units to maintain the quality of frozen or fresh foods. During the winter, drivers transporting fresh foods use their refrigeration units to prevent freezing. During the summer, frozen foods, in particular, must be kept at temperatures (such as, for frozen scallops, 0 to -10 Fahrenheit) that require operation of the refrigeration units. Newer units operate by cycling up and down, but many older units operate continuously to maintain the proper temperature. Truckers very seldom turn off their refrigeration units.

3

Cold winter weather also presents a problem for diesel engines. In cold weather, diesel fuel starts to congeal and will be harder to ignite. Thus, drivers who stop their trucks during cold weather often run their engines to warm the engine block.[1]

In January 1991, the City adopted Ordinance 7.706, which prevents the continuous operation of trucks and refrigeration units at service stations and truck stops on the Bypass. The Ordinance was designed to address citizen complaints regarding fumes and noise from trucks stopped near the neighborhoods by the Bypass. The Ordinance provides, in pertinent part:

> Section 7.706: Limited Operation of Truck Diesel
> Engines and/or Refrigeration Units
>
> A.   It shall be unlawful for the type of trucks
> designated in Section 7.702 to operate their

---

[1]The temperature at which diesel begins to congeal, the cloud point, is affected by the presence of certain additives:

> During winter months, diesel fuel is typically blended with jet-A, kerosene, or number one fuel oil to lower the cloud point in cold climate regions. Undiluted number two diesel fuel typically has a cloud point (the temperature at which a cloud of wax crystals first appears) of around 12 degrees F. Since the consequences of such solids plugging fuel lines or other engine parts are catastrophic, operators and fuel suppliers take the precaution of blending number two diesel fuel with lighter fuels to ensure that the mixture will not reach its cloud point.

Preamble, Regulation of Fuels and Fuel Additives: Fuel Quality Regulations for Highway Diesel Fuel Sold in 1993 and Later Calendar Years, 55 Fed. Reg. 34120, 34129 (Aug. 21, 1990).

> diesel engines or refrigeration units for more than fifteen (15) minutes while resting or refueling at any service station, truck stop, or truck rest or repair area located on the Route 1 By-Pass within the City of Portsmouth. . . .
>
> B.  Any person who violates any provision of Section 7.706-A shall be fined not more than $50.00 for each offense.[2]

Mr. Hanscom testified that the Ordinance was not enforced for the first five to six years after it was adopted. Beginning in November 1997, the Portsmouth police often parked a cruiser at Hanscom's, apparently to observe parked trucks. According to Mr. Hanscom, such intensive surveillance ended in January 1998. I found this testimony to be very credible, in light of my observations of Mr. Hanscom's demeanor and the other evidence.

Plaintiff's Exhibit 2 is a notice dated December 1997 directing Portsmouth police cruisers to observe Hanscom's lots and the roadways around them to enforce State laws and City ordinances, including Ordinance 7.706, "pertaining to parking, noise, etc."

Only two summonses have been issued under the Ordinance, the

---

[2]The Ordinance expressly limits truck and refrigeration unit operation while "refueling" or "resting," without reference to trucks obtaining repairs. The precise construction of the Ordinance with respect to its coverage of repairs is beyond the scope of my report and recommendation, since the statute at issue, 49 U.S.C. § 31114(a), refers to resting and refueling, as well. Moreover, the parties presented no evidence as to whether the Ordinance is enforced against trucks obtaining repairs.

first in June 1998 and the second in August 1998. Both were for tractor-trailers with refrigeration units, observed to be operating for more than fifteen minutes at Hanscom's. According to counsel, these two enforcement proceedings have been continued pending the outcome of this action.

## Discussion

A request for a preliminary injunction is evaluated through a four-part test, taking into account: (1) the likelihood of success on the merits; (2) the potential for irreparable injury; (3) whether the harm to plaintiff outweighs the harm defendant would suffer from the imposition of an injunction; and (4) the effect on the public interest. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).

## I.    Likelihood of Success

Hanscom's contends that 42 U.S.C. § 31114(a) preempts the Ordinance because it denies trucks access to Hanscom's food, fuel, repair, and rest facilities, which are within a mile of Interstate 95 and the Spaulding Turnpike. The statute provides, in pertinent part, that a "State may not enact or enforce a law" denying certain trucks "reasonable access" between the Nation's highways and "facilities for food, fuel, repairs, and rest." 49 U.S.C. § 31114(a)(1) & (2). There is no dispute that the trucks regulated under the Ordinance are the same trucks at issue in 49

6

U.S.C. § 31114.  As explained below, Hanscom's has demonstrated a substantial likelihood of prevailing on the merits of its pre-emption claim.

A.   **Justiciability and Abstention**

   1.   **Justiciability**

The absence of a specific provision of the Act authorizing a private right of action (in the face of a provision authorizing federal enforcement, see 49 U.S.C. § 31115), and the fact that Hanscom's is a truck stop, not a truck, both raise concerns regarding justiciability.  While justiciability was not briefed, Hanscom's argued in favor of standing at the hearing.[3]

The absence of an express private right of action under 49 U.S.C. § 31114 does not preclude Hanscom's claim.  A plaintiff seeking injunctive relief from State regulation on the ground that the regulation is pre-empted "'presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.'"  Lawrence County v. Lead-Deadwood School Dist., 469 U.S. 256, 259 n.6 (1985) (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 96 n.14 (1983)).  This case arises under the Supremacy

_____

[3]Standing and similar issues of justiciability are prerequisites to success on the merits.  These issues are addressed herein for the purpose of evaluating Hanscom's likelihood of prevailing on the merits.  Given the preliminary stage of the proceedings and the parties' failure to focus on these issues in their memoranda, however, the court may revisit these issues at a later stage of the case.

Clause, and Hanscom's has requested injunctive relief to prevent the City's enforcement of the Ordinance. Accordingly, the absence of an express right of action does not bar the pre-emption claim.

As to standing, there are two potential problems in this case: the requirement of injury-in-fact under Article III, and the prudential zone of interests requirement. Injury-in-fact means that the plaintiff must have a personal stake in the outcome. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Here, Hanscom's presented evidence that its business is mostly comprised of interstate diesel trucks with refrigeration units. The City began to enforce the Ordinance a year ago and has issued two summonses so far against trucks with refrigeration units. The undisputed evidence is that the Ordinance has been enforced only at Hanscom's, not at any other service stations on the Bypass. Hanscom's has argued that once word gets around that the Ordinance is being enforced at Hanscom's, Hanscom's is likely to lose business. This is sufficient, at this stage of the proceeding, to establish injury-in-fact.

To satisfy the prudential standing requirement at issue, a plaintiff must show that its injury falls within the "zone of interests" protected by the statute at issue. See Air Courier Conf. of Am. v. American Postal Workers Union, 498 U.S. 517, 523

8

(1991). "In other words, under this prudential requirement, the only litigants who may sue to enforce a law are individuals who belong to the class that the law was designed to protect." James W. Moore, 15 Moore's Fed'l Prac. § 101.51[1][a], at 101-77 (3d ed. 1998).

Truckers involved in interstate commerce on the Nation's highways are within the zone of interests of 49 U.S.C. § 31114. Thus, with respect to the zone of interests test, the standing of a trucker threatened with prosecution under the Ordinance would be unassailable.

The class of persons within the zone of interests of the statute may be more broadly defined, however, to include truck stop operators, such as Hanscom's, that provide "facilities for food, fuel, repairs, and rest," 49 U.S.C. § 31114(a)(2). Such truck stops support interstate trucking and are the other express beneficiaries of Congress's prohibition of State laws denying reasonable access. Hanscom's thus has standing to litigate its pre-emption claim.[4]

---

[4]Hanscom's raised further arguments in favor of standing that are not viable. The rights of truckers who may be summonsed for violations are theirs alone to assert. Hanscom's has shown neither that it has a "special relationship" with the third party truckers subject to the Ordinance, cf. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623 n.3 (1989) (lawyer had standing to raise client's Sixth Amendment rights), nor that the truckers themselves cannot pursue their own claims, cf. Powers v. Ohio, 499 U.S. 400, 413 (1991) (criminal defendant

## 2. **Abstention**

The pending, albeit stayed, State proceedings involving truckers who received citations under the Ordinance raise a question regarding abstention. This issue was not briefed by the parties, but is addressed below.

Under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), district courts must normally abstain from staying or enjoining pending State court criminal proceedings. By the same token, district courts may not issue declaratory judgments regarding the validity of State statutes when the plaintiff is subject to a pending State criminal proceeding. <u>See</u> <u>Samuels v. Mackell</u>, 401 U.S. 66, 72-73 (1971); <u>accord</u> <u>Bettencourt v. Board of Registration</u>, 904 F.2d 772, 777 (1st Cir. 1990). If, however, the federal case involves a plaintiff who is legally distinct from, and not otherwise closely related to, the State court defendant, the district court need not abstain from resolving the claims, even if the State proceeding involves the same issues. <u>See</u> <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 928-29 (1975).

In this case, Hanscom's is not a party to any State

could assert jurors' rights because jurors are impeded from challenging racial composition of jury). Furthermore, the Ordinance's alleged impact on interstate commerce or highway safety is too generalized for Hanscom's to cite as the basis for its own standing. <u>Cf.</u> <u>Asarco, Inc. v. Kadish</u>, 490 U.S. 605, 616 (1989) (assertion by teacher's association that it had interest in quality of education was insufficient to confer standing).

prosecution.  The truckers cited for violating the Ordinance are not agents of Hanscom's, and there is no evidence that they are in any other way related to Hanscom's.  Accordingly, Younger abstention is not required.  I recommend that the district court proceed to judgment in this case.

**B.    Pre-emption**

The Supremacy Clause of the Constitution prohibits States from enacting or enforcing laws contrary to the laws of the United States.  Where Congress has clearly expressed its intention to preempt conflicting State law, the inquiry is whether the State law in question actually conflicts with federal law.  See Grunbeck v. Dime Sav. Bank of New York, FSB, 74 F.3d 331, 336 (1st Cir. 1996).

The statute allegedly pre-empting the Ordinance, along with a provision of the Act carving out an exception to the statute, is set forth in pertinent part below:

> (a) A State may not enact or enforce a law denying to a commercial motor vehicle . . . reasonable access between –
>
> > (1) the Dwight D. Eisenhower System of Interstate and Defense Highways . . . and
> >
> > (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, or any . . . truck tractor-semitrailer combination . . . .
>
> (b) This section does not prevent a State or local

11

government from imposing reasonable restrictions, based on safety considerations, on a truck tractor-semitrailer combination . . . .

49 U.S.C. §§ 31114(a) & (b). Hanscom's is located on a through truck route, within a mile of the ramps to Interstate 95 and the Spaulding Turnpike, part of the national highway network, and is thus covered by the statute.[5]

### 1. Definition of "State"

While the City did not raise the issue, the plain language of 49 U.S.C. § 31114(a), referring to "State" laws, and not to municipal ordinances, raises a further issue with respect to the pre-emption analysis. The applicable definition of "State," see 49 U.S.C. § 31101(4), does not specifically provide that the term includes political subdivisions. I conclude, for the following reasons, that the City's ordinance is within the scope of 49 U.S.C. § 31114(a).

First, in denying a motion to dismiss for failure to state a claim in a similar case, this court has previously construed the statute to pre-empt certain municipal ordinances. See New

---

[5] See 23 C.F.R. § 658.19(d) ("No State may enact or enforce any law denying access within 1 road-mile from the National Network using the most reasonable and practicable route available except for specific safety reasons on individual routes."); New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 330 (1st Cir. 1995) ("Plaistow III") ("Local roads and other facilities are also covered by the provision to the extent needed to assure reasonable access to the national network."), cert. denied, 517 U.S. 1120 (1996).

12

Hampshire Motor Transp. Ass'n v. Town of Plaistow, 836 F. Supp. 59, 65 (D.N.H. 1993) ("Plaistow I"). See also New York State Motor Truck Ass'n v. City of New York, 654 F. Supp. 1521 (S.D.N.Y.) (New York City regulation pre-empted by Act), aff'd, 833 F.2d 430 (2d Cir. 1987).

Furthermore, in upholding the district court's subsequent decision in the Plaistow litigation to enter judgment in favor of the Town, the First Circuit did not question the district court's holding regarding the effect of the statute on local ordinances. The First Circuit stated that the statute has a "formidable reach, extending to local regulatory measures that operate miles away from any interstate or national network highway." Plaistow III, 67 F.3d at 330.

Finally, Congress's exception to the prohibition on State laws explicitly refers to "local" ordinances, see 49 U.S.C. § 31114(b), which implies that the prohibition in section 31114(a) may be applied to pre-empt certain local ordinances. Therefore, I conclude that 49 U.S.C. § 31114(a) pre-empts certain municipal ordinances, as well as certain State statutes.

### 2. Denial of Access

The City's principal argument is that 49 U.S.C. § 31114(a) is inapplicable because the Ordinance does not restrict truck "access" to Hanscom's. Rather, the Ordinance relates only to the

13

operation of vehicles once they are parked at Hanscom's. This argument is not compelling.

The Ordinance at issue restricts access because it effectively prevents the majority of truck traffic coming from Interstate 95 and the Spaulding Turnpike, highways included within 49 U.S.C. § 31114(a)(1), from using Hanscom's. The undisputed evidence is that most drivers require more than fifteen minutes for Hanscom's services. Refueling takes twenty to thirty minutes, repairs take an hour, and eating and showering at Hanscom's may take at least an hour. Some drivers rest overnight. Cf. 49 C.F.R. § 395.3 (commercial drivers required to rest after specified periods of operation).

The majority of trucks using Hanscom's have refrigeration units, and, to prevent spoilage, drivers rarely if ever turn off these units. Drivers may need to run their motors in the winter to ensure that the diesel fuel will not thicken and fail to ignite. Therefore, the Ordinance, by prohibiting truckers from operating engines and refrigeration units for more than fifteen minutes, effectively restricts access to Hanscom's facilities.

### 3. Reasonableness of Restriction

The City next suggests that the Ordinance is not pre-empted either because it falls within an explicit exception to the statute, see 49 U.S.C. § 31114(b), or because it otherwise

14

permits "reasonable" access to Hanscom's under 49 U.S.C. § 31114(a). As to the argument that the restriction qualifies under 49 U.S.C. § 31114(b), the City has offered no evidence or explanation suggesting that "safety" issues are addressed by the Ordinance. Accordingly, the Ordinance does not fall within the exception set forth in 49 U.S.C. § 31114(b), which applies only to safety restrictions on truck tractor-semitrailer combinations. See Plaistow III, 67 F.3d at 330.

Because the term "reasonable access" in 49 U.S.C. § 31114(a), however, is not limited to safety issues, further analysis of the evidence is necessary to determine if the Ordinance denies "reasonable" access. See Plaistow III, 67 F.3d at 329-31. To determine whether local restrictions deny "reasonable access," the court must engage in a balancing test. See, e.g., New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 881 F. Supp. 695, 702 (D.N.H. 1994) ("Plaistow II"), aff'd on other grds., 67 F.3d 326 (1st Cir. 1995), cert. denied, 517 U.S. 1120 (1996).

In Plaistow II, the court balanced the plaintiffs' interests against the rights of abutting landowners and the town's interest in controlling noise and odors. The plaintiffs in Plaistow II contended that a State court injunction, enforcing a town ordinance by expressly limiting trucks nighttime truck terminal

15

arrivals and departures, was pre-empted by the Act. The terminal's access road was located partly in a residential zone, which included at least one home older than the terminal. See id. at 698-99. The terminal was located over five miles from the nearest interstate. See id. at 702. Witnesses testified regarding their frustration with noise and odors from trucks, particularly at night. See id. at 698-99.

The court compared such factors with the exigencies of the truck terminal's business interests. See id. at 699-700. The business climate for the terminal was competitive, and the business itself was time sensitive. See id. at 700. Some of the terminal's competitors were also subject to nighttime access restrictions. Nevertheless, the terminal had lost business as a result of the access restrictions. See id. These factors were carefully considered by the State court when it fashioned its equitable decree enforcing the ordinance, and the district court concluded that, on balance, the decree did not unreasonably restrict access to the terminal. See id. at 702.

Applying a similar balancing test in this case, the evidence distinguishes this case from Plaistow and provides a basis for finding pre-emption. Hanscom's has been in operation for more than thirty years and is located within a mile of the Interstate on a through truck route. The noise of trucks on the Interstate

16

and on the adjacent Bypass can be heard from Hanscom's.  The fifteen-minute time limit bears no connection to the time needed for trucks at Hanscom's to refuel, to complete repairs, or to use Hanscom's facilities for resting.  The Ordinance has been enforced only at Hanscom's, and not at any other service station on the Bypass.  Finally, Hanscom's is the only 24-hour tire repair facility for over a 100 miles on Interstate 95, which means that it provides critical services for highway safety.

Balanced against these interests are those of the City.  The City offered absolutely no evidence regarding either the intensity of noise and fumes emanating from Hanscom's, the benefit obtained from enforcing the restriction only as to Hanscom's, or the effect of permitting trucks to operate their engines and refrigeration units for fifteen minutes, per se.  The City has chosen to rely on its legitimate interest in noise and odor control as the justification for the reasonableness of the Ordinance.  The City's argument in this context requires reference to the presumption "that federal law does not supersede a state's historic police powers unless that is the clear and manifest purpose of Congress."  Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 68 (1st Cir. 1997) (internal quotation marks and citations omitted).

Even taking this presumption into account, however, it is

17

apparent that the Ordinance is pre-empted.  Congress expressly pre-empted all State laws that unreasonably restrict access to facilities such as Hanscom's, without reference to the source of authority for such laws.  While an interest in controlling noise and odors by limiting diesel engine operation may be within the police powers, the Ordinance, as adopted and enforced, is not a "reasonable" restriction on access in light of all the evidence. Of particular weight in my analysis is the potential impact of the Ordinance on access to Hanscom's late-night services or resting facilities during bad weather, and the attendant highway safety risks.  On balance, I find that Hanscom's has demonstrated that the Ordinance is an unreasonable restriction, prohibited by 49 U.S.C. § 31114(a).  Hanscom's has, therefore, demonstrated a substantial likelihood of prevailing on the merits of its pre-emption claim.[6]

------

[6]Mr. Hanscom attended a hearing on the Ordinance in 1991. The minutes of the hearing, Defendant's Exhibit E, state that Mr. Hanscom did not oppose the Ordinance, but felt that its reference to "repair area" may "create a problem" as "trucks often have to be left overnight."  Mr. Hanscom maintained on cross-examination that he never agreed that the Ordinance should apply to refrigeration units.  Defendant's Exhibit D indicates that the Ordinance was adopted "as amended" on the date of the public hearing.  There is no evidence to substantiate whether the Ordinance was amended materially at the conclusion of the public hearing.  The City has not explicitly argued that Mr. Hanscom should be estopped from presenting a pre-emption claim, and, in any event, there is insufficient evidence for me to find estoppel at this stage of the proceeding.

18

## II. **Irreparable Harm**

The second factor relevant to the issuance of a preliminary injunction is irreparable harm. Hanscom's proof of irreparable harm includes the likelihood that it will lose business as a result of the Ordinance's enforcement. The City's response is that Hanscom's operated profitably for more than six years with the Ordinance in effect, so that it is apparent that the Ordinance has not damaged Hanscom's.

Contrary to the City's contention, however, Hanscom's has made a sufficient showing of irreparable harm. The City's argument that Hanscom's has operated profitably with the Ordinance in place is immaterial, since the Ordinance was not enforced before November 1997 and the first summons was issued in June 1998, less than five months ago.

Furthermore, "[t]o establish irreparable harm . . . a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996). "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." Id. at 19. See also A.W. Chesterton Co. v. Chesterton, 128 F.3d 1, 8 (1st Cir. 1997) (loss of Internal Revenue Code subchapter S status). In Ross-Simons,

19

the court concluded that a business providing a bridal registry demonstrated irreparable harm by showing that it would likely suffer a loss of customers and goodwill if it could not offer a certain high-end product line, even if that line constituted a small percentage of total sales.

Similarly, in this case, Hanscom's has proved that the City's recent enforcement activities are likely to cause it to lose business, once word gets around that the City is enforcing the Ordinance only at Hanscom's. Hanscom's inability to calculate this loss of business is a reason to grant it injunctive relief. See Ross-Simons, 102 F.3d at 19. Hanscom's has thus established irreparable harm.

### III. Balance of Hardships

The next factor relevant to the issuance of a preliminary injunction is the balance of hardships. With respect to whether the irreparable harm to Hanscom's outweighs the harm the City would suffer from the imposition of an injunction, the City contends that the interest of Hanscom's neighbors in noise and odors is paramount.

The City's argument regarding the harm it would suffer if the enforcement of the Ordinance were enjoined is not supported by any evidence regarding the extent of noise and odors coming from Hanscom's. Moreover, the City's failure to enforce the

20

Ordinance for more than six years after its adoption dilutes the strength of its argument.  In any event, the City's concerns may be alleviated by tailoring the injunction, as explained below.  Accordingly, I conclude that the balance of hardships weighs in favor of issuance of an injunction.

## IV.  <u>Public Interest</u>

Finally, in issuing a preliminary injunction, the court must consider the public interest.  The public interest in this case cuts both ways:  the interest of the citizens of Portsmouth who live adjacent to Hanscom's favors enforcement of the Ordinance to reduce fumes and noise, and the broader public interest in interstate truck transport and highway safety disfavors enforcement of a regulation that discourage trucks in need of services from using Hanscom's for fear of a fine.

I find this factor to be indeterminate in this context.  The risks to highway safety and interstate commerce cannot be quantified in light of the evidence.  Similarly, the City's interest in controlling noise and fumes does not carry substantial weight, given that only two summonses have been issued and the Ordinance was not enforced at all for many years. The City itself designated the Bypass as a through truck route, and trucks on the Bypass generate noise and fumes, even without stopping at Hanscom's.  Accordingly, the evidence on the public

interest neither weighs against, nor in favor of, the issuance of a preliminary injunction.

## V.    Preliminary Injunction

Since the relevant factors generally militate in favor of an injunction, and the public interest does not weigh against its issuance, I recommend that the court preliminarily enjoin the City from enforcing the Ordinance at Hanscom's.  To minimize the impact of an injunction on the City's interests, while preventing an unreasonable restriction on access to Hanscom's, an injunction should be subject to the following limitations:

### A.    Diesel Engines

With respect to the diesel engine of the tractor of trucks at Hanscom's, the court should preliminarily enjoin the enforcement of the Ordinance only as to trucks using Hanscom's for purposes expected to take longer than two hours, during times when temperatures are below twenty degrees (20) Fahrenheit.

With this aspect of the injunction in place, the City may enforce the Ordinance as to all such diesel engines, regardless of the time expected for the truckers' use of Hanscom's, if temperatures are above twenty degrees (20) Fahrenheit.  When temperatures are nineteen degrees or below, the City may enforce the Ordinance only as to trucks using Hanscom's for purposes expected to take less than two hours, such as routine refueling

22

and short rests. This aspect of the injunction may not have a significant, negative impact on the City's interests. Even in colder weather, drivers may be unlikely to run their engines unnecessarily, to avoid wasting fuel.

This restriction takes into account the effect of cold weather on diesel fuel, and the prevalence of the use of fuel additives. There was no evidence suggesting that diesel engines need to be operated when parked at Hanscom's in warmer weather. The only evidence offered at the hearing on the need for continuous operation of diesel engines was Mr. Hanscom's testimony that it may be difficult for trucks to start if the temperature is really cold and the engines were turned off for a prolonged period. Two hours is a time frame in which the engine block of a truck coming from the Interstate might remain sufficiently warm to prevent the thickening of diesel fuel, and the twenty degree cut-off is consistent with Mr. Hanscom's testimony as well as the information on the cloud point of diesel fuel published in the Federal Register (see supra note 1).

B. **Refrigeration Units**

With respect to the refrigeration units of trucks using Hanscom's for any purposes, regardless of the expected duration, the court should preliminarily enjoin the City from enforcing the Ordinance. Thus, for the duration of the injunction, the City

may not enforce the Ordinance at all as to the generators of refrigeration units.

Refrigeration units are presumably insulated and may be able to maintain a required internal temperature for a period of time, even if the generator is turned off. The only evidence before me, however, was that drivers seldom turn off their units, and that most units need to be operated continuously or the drivers will risk losing their entire load. If the units warm up or cool down excessively, the load may be rejected and the drivers may face large claims. Because the City failed to offer any evidence to the contrary regarding the need for units to operate continuously or the risks associated with temperature deviations, there is no basis for me to permit the City to enforce the Ordinance as to refrigeration units at Hanscom's. Based on the evidence before me, any enforcement of the Ordinance by the City as to refrigeration units would have the effect of unreasonably denying refrigerated trucks' access to Hanscom's.

Any objections to this report and recommendation must be filed within ten days of receipt of this notice. Failure to file an objection within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law

24

<u>Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).


                                         _____

James R. Muirhead
United States Magistrate Judge

Date: November 10, 1998

cc:  Robert P. Sullivan, Esq.
     Paul McEachern, Esq.

25