**CITIBANK, FEDERAL SAVINGS BANK, 180 Grand Avenue, Oakland, CA 94604–2082, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, 550 17th Street, N.W., Washington, D.C. 20429, Defendant.**

Civ. A. No. 93–0661.

United States District Court, District of Columbia.

Oct. 5, 1993.

4

Steven Siegmund Rosenthal, Morrison & Foerster, Washington, DC, for Citibank, Federal Sav. Bank.

Daniel F. Ross, Federal Deposit Insurance Corporation, Legal Division, Washington, DC, for F.D.I.C.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiff Citibank, Federal Savings Bank, located in California ("Citibank–Cal"), brought this action against defendant Federal Deposit Insurance Corporation ("FDIC") alleging that the FDIC wrongfully withheld a portion of Citibank–Cal's share of the "secondary reserve" maintained by the FDIC. In its complaint, Citibank–Cal claims that as a result of a merger executed on October 26, 1990 involving itself, Citibank, Federal Savings Bank, Illinois ("Citibank–Ill") and Citibank, Federal Savings Bank, District of Columbia ("Citibank–D.C."), Citibank–Cal as the surviving entity acquired the rights to the "secondary reserve" held by Citibank–Ill and Citibank–D.C. Plaintiff asserts that the defendant's refusal to acknowledge the transfer to Citibank–Cal the interest in the "secondary reserve" formerly held by Citibank–Ill and Citibank–D.C. violates the Federal Deposit Insurance Act ("FDIA") and the "takings" clause of the Fifth Amendment to the United States constitution.

Defendant FDIC has moved to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. It also has moved, in the alternative, for partial summary judgment requesting this court to declare that Citibank–Cal obtained no interest in the "secondary reserve" as a result of the 1990 merger. Plaintiff Citibank–Cal has moved for summary judgment seeking a declaratory judgment enforcing Citibank–Cal's rights to the shares of the "secondary reserve" held by Citibank–D.C. and Citibank–Ill prior to the merger.

*Background*

Until 1962, the Federal Savings and Loan Insurance Corporation ("FSLIC") insured deposits in FSLIC member institutions by means of a single insurance fund which was funded by annual premium payments by the member institutions. In 1961, Congress, concerned that the fund might prove inadequate to cover potential losses, directed FSLIC to establish a "secondary reserve" to be funded by prepayments by insured savings and loan institutions. The "secondary reserve" was intended to be used by FSLIC to the extent that other accounts of FSLIC maintained to cover losses proved insufficient. The contributing institutions retained a property interest in the shares of the "secondary reserve" and received interest on their contributions. FSLIC maintained separate accounts for each thrift institution's share of the secondary reserve and issued an annual statement to each institution detailing both its share and accrued interest. Insured savings and loan institutions made payments to the "secondary reserve" from January 1, 1962 until Congress eliminated the requirement on August 16, 1973.

In May 1987, FSLIC announced that the secondary reserve had been used to cover FSLIC's 1986 losses. That announcement prompted protests from affected institutions. In response, the Federal Home Loan Bank Board ("FHLBB"), the agency that had oversight responsibility for FSLIC, proposed legislation to reinstate the insured savings and loan institutions' interests in the secondary reserve. In the Competitive Equality in Banking Act of 1987 ("CEBA"), Congress restored the "secondary reserve." CEBA provided more than $10 billion to recapitalize the FSLIC, of which approximately $800 million was dedicated to restore the "secondary reserve." CEBA also allowed an insured institution to offset its interest in the secondary reserve against future insurance premiums assessed against the institution. When Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") FSLIC's insurance functions were transferred to the FDIC which gained custody and control of the "secondary reserve."

*Facts*

On October 26, 1990, Citibank–Cal, Citibank–Ill, and Citibank–D.C. executed a merger agreement under which Citibank–D.C. and Citibank–Ill merged into Citibank–Cal. The Office of Thrift Supervision approved the application on December 28, 1990 and the merger became effective on December 31, 1990. As of the date of the merger, Citibank–D.C.'s share of the "secondary reserve" was $1,182,999.50 and Citibank–Ill's share was $2,399,290.90. Although Citibank–Cal had a separate interest in the "secondary reserve," its claim in this case relates to the interests of its two related entities, which total $3,582,290.40.

The insurance premium paid by an FDIC member institution is a percentage of the thrift's total deposits less any "secondary reserve" credit. The FDIC bills member institutions for insurance premiums by sending each institution a semi-annual statement called a preliminary certified statement which shows the insured institution's "secondary reserve" credit. Insured institutions receive a preliminary certified statement in January and July of each year.

In January 1991, the FDIC sent semi-annual statements to Citibank–Cal, Citibank–D.C., and Citibank–Ill crediting each with their appropriate "secondary reserve" credit. Citibank–Cal paid its January 1991 semi-annual insurance premium using, in part, the *pro rata* "secondary reserve" credits of Citibank–D.C. and Citibank–Ill. The FDIC's July 1991 preliminary certified statement to Citibank–Cal did not credit Citibank–Cal with the "secondary reserve" shares of either

Citibank–D.C. or Citibank–Ill. As a result of an inquiry by Citibank–Cal, the FDIC sent a new statement which showed credits for all three banks' shares of the "secondary reserve." In January 1992, the FDIC sent Citibank–Cal a preliminary certified statement which did not credit Citibank–Cal with the shares of the secondary reserve formerly held by Citibank–D.C. and Citibank–Ill. Citibank–Cal sent a letter to FDIC which claimed full credit for all three banks. The FDIC disallowed credit for Citibank–Ill's and Citibank–D.C.'s "secondary reserve" shares. In January 1993, Citibank–Cal again claimed "secondary reserve" credit for Citibank–D.C. and Citibank–Ill and once again the FDIC disallowed the use of those credits.

### Discussion

The governing sections of the FDIA in this dispute are sections 7(m)(4) and 7(m)(5). 12 U.S.C. §§ 1817(m)(4) and 1817(m)(5). Section 7(m)(5)(A) provides:

> [If] the status of any savings association as an insured depository institution is terminated pursuant to any provision of Section 8 or the insurance of accounts of any savings association institution is otherwise terminated ... the Corporation [FDIC] shall pay in cash to such institution its pro rata share of the secondary reserve, in accordance with such terms and conditions as the Corporation may prescribe ... Such payment or such application need not be made to the extent that the provisions of the exception in paragraph (4) are applicable.

12 U.S.C. § 1817(m)(5). Thus, FDIC's duty to pay to an insured savings association, in cash, the institution's *pro rata* share of the "secondary reserve" is triggered by any event which terminates either that institution's status as an insured institution or its insurance of accounts. Section 7(m)(4) of the FDIA, which governs the transferability of shares of the "secondary reserve," provides:

> [n]o right, title, or interest of any insured depository institution on or with respect to its pro rata share of the secondary reserve shall be assignable or transferable whether by operation of law or otherwise, *except to the extent that the Corporation may pro-*

*vide for transfer of such pro rata share in cases of merger or consolidation ...*

12 U.S.C. § 1817(m)(4) (emphasis added).

The FHLBB, in 1962, provided by regulation for the transfer of interests in the "secondary reserve" upon the merger of insured thrift institutions. 27 Fed.Reg. 4662–63 (May 17, 1962). In 1990, the same regulation, with some immaterial changes, was codified in 12 C.F.R. § 385.8(b). The regulation provides in pertinent part:

> In the event that an insured institution (hereinafter in this sentence called the merging institution) is merged into another insured institution (hereinafter in this sentence called the surviving institution) the merging institution's pro rata share of the secondary reserve, if any, shall automatically be transferred to the surviving institution.

This regulation by its express terms "provides for" the transfer of shares of the "secondary reserve" upon the merger of insured institutions.

On August 22, 1990, the FDIC published a notice in the Federal Register which stated that certain FDIC regulations, including 12 C.F.R. § 385.8(b), would be repealed "because they are redundant with other FDIC regulations or conflict with statutory law, or are unnecessary." The benign notice failed to generate any comments from interested parties and the regulations, including 12 C.F.R. § 385.8(b), were repealed on November 5, 1990.

The FDIC argues, in support of its motion for partial summary judgment, that the repeal of 12 C.F.R. § 385.8(b) eliminated the ability of insured institutions to transfer interests in the "secondary reserve" upon merger. According to the FDIC, with the repeal of 12 C.F.R. § 385.8(b), there was no longer any automatic transfer of shares in the "secondary reserve" upon merger of insured institutions. As such, it is alleged that section 7(m)(4) of the FDIA operated to block the transfer of *pro rata* shares in the "secondary reserve" from Citibank–Ill and Citibank–D.C. to Citibank–Cal at the time of their merger.

■ Citibank–Cal maintains that the repeal of 12 C.F.R. § 385.8(b) is invalid because it violated the rule-making provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"). This court finds the plaintiff's reasoning persuasive. Section 553 of the APA sets forth the procedures to be followed by agencies of the federal government when promulgating rules. Those procedures require an agency to publish notice of the proposed rule in the federal register and to allow time for comments from interested parties. The notice and comment procedures which apply to the creation of new regulations are equally applicable to the repeal of existing regulations. *See Consumer Energy Council of America v. FERC,* 673 F.2d 425, 446 (D.C.Cir.1982), *aff'd,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1402, 1403, 1413 (1983).

■ A notice of proposed rule-making is legally inadequate if it does not "adequately frame the subjects for discussion." *Connecticut Light and Power Co. v. NRC,* 673 F.2d 525, 533 (D.C.Cir.1982). The FDIC, in its notice published in the Federal Register on August 22, 1990, failed to adequately describe the effect of the proposed repeal of 12 C.F.R. § 385.8(b). The notice described the regulations to be repealed as "redundant with other FDIC regulations or conflict[ing] with statutory law, or . . . unnecessary." 55 Fed.Reg. 34281 (August 22, 1990). On November 5, 1990, when the FDIC published its notice repealing the regulations, it again referred to them as redundant or unnecessary. 55 Fed.Reg. 46495 (November 5, 1990).

■ 12 C.F.R. § 385.8(b) is neither redundant with other FDIC regulations, conflicting with statutory law, nor unnecessary. Its repeal effected significant changes in the property rights of FDIC–insured institutions in the "secondary reserve." Nowhere in the August 22, 1990 notice does the FDIC mention this important regulatory change. The FDIC cannot have it both ways. It cannot assert that the repeal altered its policy concerning the transfer of shares in the "secondary reserve" while simultaneously maintaining the position that the repeal affected no substantive rights. As proffered by the FDIC, the effect of the repeal of 12 C.F.R. § 385.8(b) on the plaintiff's merger was to destroy the property interests of Citibank–Ill and Citibank–D.C. in the secondary reserve worth more than $3.5 million. Rather than withdrawing a unneeded or superfluous regulation, the FDIC actually reversed the law, eliminating an existing property right without giving appropriate notice. Notice which fails to alert the public to significant policy changes violates the APA's notice and comment provisions. *See Natural Resources Defense Council, Inc. v. Hodel,* 618 F.Supp. 848 (E.D.Cal.1985). Therefore, this court holds that because the FDIC did not comply with the relevant provisions of the APA when it purported to repeal 12 C.F.R. § 385.8(b), the repeal of that regulation was invalid. Consequently, 12 C.F.R. § 385.8(b) was still in force at the time of the merger of Citibank–Ill and Citibank–D.C. into Citibank–Cal.

Defendant also argues that were Citibank–Cal to establish that the FDIC *had* provided for the transferability of shares in the "secondary reserve," section 7(m)(5) of the FDIA would excuse the FDIC from any obligation to make a cash payment to Citibank–Cal. The FDIC interprets sections 7(m)(4) and 7(m)(5) as establishing a mechanism under which the last sentence of section 7(m)(5) becomes applicable only when the FDIC has provided for the transfer of shares in the "secondary reserve" pursuant to section 7(m)(4). Under the statutory interpretation advanced by the FDIC, the FDIC is excused from its cash payment obligation to Citibank–Cal under section 7(m)(5) when it has provided for the transfer of shares in the "secondary reserve" pursuant to section 7(m)(4). In summary, the FDIC's position is that there is no legal basis for allowing transfers of "secondary reserve" shares but should this court find otherwise, the FDIA bars a cash payment to Citibank–Cal.

Citibank–Cal asserts that the plain language of section 7(m)(5) requires the FDIC to pay to the insured depository institution, in cash, the *pro rata* share of its interest in the "secondary reserve" when either that institution's status as an insured institution or its insurance of accounts is terminated. Merger is recognized in the FDIA as an event that automatically terminates a thrift

institution's status as an insured depository institution. 12 U.S.C. § 1818(q). Citibank–Cal contends that section 7(m)(4) simply presents FDIC with an alternative to the cash payment required in section 7(m)(5). Thus, if the FDIC decides not to pay the merged institution's *pro rata* share of the "secondary reserve" in cash, it "may provide for transfer of such pro rata share" to the surviving institution.

 It is well settled that in construing a statute, the statute must be read as a whole. *King v. St. Vincent's Hospital,* 499 U.S. ——, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991). Section 7(m)(4) thus can only be understood if it is read in conjunction with Section 7(m)(5). This court finds that when read together, the reasonable meaning of sections 7(m)(4) and 7(m)(5) is that when an insured thrift institution merges into another, the FDIC must pay the acquired institution's interest in the "security reserve" in cash to the new entity, unless it has otherwise provided for transfer of the interest to the new entity. Paragraph (m) of section 7 of the FDIA was drafted to ensure that an insured institution whose status is terminated pursuant to a merger can receive its share of the secondary reserve either in cash or have it transferred to the new entity to be used as a credit against future insurance premiums.

At the time of the merger, Citibank–Ill and Citibank–D.C. had legal interests in the "secondary reserve" which were readily transferable pursuant to regulations drafted by the FDIC. After the merger and after Citibank–Cal took credit for the shares in the "secondary reserve" formerly held by Citibank–Ill and Citibank–D.C., the FDIC denied that the shares of the latter institutions were transferred to Citibank–Cal upon the merger. To bolster its position the FDIC relied on a fanciful interpretation of section 7(m) of the FDIA and on an invalid repeal of a critical regulation. This the FDIC cannot do. Its actions fly in the face of laws enacted by the Congress.

Taken as a whole, the defenses offered by the FDIC in response to Citibank–Cal's claims are hyper-technical. By granting FDIC's motion, this court would be perpetrating an injustice. The government in this case seeks a windfall at the expense of private parties. The plaintiff's predecessors paid to the government large sums of money over a number of years and they have a right under the law to reclaim these payments. The defendant seeks to extinguish the plaintiff's rights under a technical interpretation. It has provided no public policy arguments that would in any way support the inequities of the position it now asserts. The plaintiff's motion is granted and the defendant is ordered to credit the plaintiff the *pro rata* shares of the secondary reserve held by Citibank–D.C. and Citibank–Ill as of October 26, 1990 or to pay the plaintiff for those shares in cash, and to pay to the plaintiff the costs in bringing this law suit.[1]

### ORDER

This matter is before the Court on plaintiff Citibank–Cal's Motion for Summary Judgment and Defendant Federal Deposit Insurance Corporation's Motion to Dismiss or, in the Alternative, for Partial Summary Judgment. This Court has considered the arguments put forth by both parties and has reviewed the entire record in this case. Accordingly, for the reasons stated above, it is this 5th day of October, 1993:

ORDERED that the plaintiff's Motion for Summary Judgment is granted and the defendant's Motion to Dismiss or, in the Alternative, for Partial Summary Judgment is denied;

ORDERED that the defendant is required to credit to the plaintiff the *pro rata* shares of the secondary reserve held by Citibank–D.C. and Citibank–Ill as of October 26, 1990, or to pay for those shares in cash; it is further

---

1. Because the court's determination is based on statutory grounds, it finds no need to rule on plaintiff's alternative argument, namely that the FDIC's actions with respect to the "secondary reserve" amounted to a violation of the "takings" clause of the fifth amendment to the United States Constitution.

ORDERED that the defendant pay to the plaintiff the allowable costs incurred in bringing this action.